## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

WILLIE MAE THORNTON,

      Petitioner,

v.                                  Case No. 3:22-cv-5764-MCR-MJF

RICKY D. DIXON,

      Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner Willie Mae Thornton, proceeding *pro se*, has filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. Doc. 1. Respondent ("the State") answered, providing relevant portions of the state court record. Doc. 17. Thornton did not reply.[1] The undersigned concludes that no evidentiary hearing is required for the disposition of this matter, and that Thornton is not entitled to habeas relief.[2]

---

[1] Thornton's reply deadline expired on November 21, 2022. *See* Doc. 18.

[2] The District Court referred this case to the undersigned to address preliminary matters and to make recommendations regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b).

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY[3]

On September 13, 2014, Thornton and her son robbed a convenience store in Pensacola, Florida, and murdered the clerk/owner. The Florida First District Court of Appeal ("First DCA") summarized the facts in its published opinion denying Thornton postconviction relief:

> On the afternoon of September 13, 2014, the T & M Food Mart was robbed. The owner—who was working as the clerk at the time—was found dead behind the counter with a gunshot wound to the back of his head. Law enforcement ultimately developed Thornton as a suspect after her DNA was found on a glove left at the scene. Additionally, the gun used in the shooting was owned by Thornton's boyfriend.
>
> Thornton was interviewed by detectives twice and both interviews were recorded. In her first interview, she initially denied any involvement and denied taking a glove into the store. But after learning the glove contained her DNA, she admitted she was present when her son suddenly decided to shoot the clerk and rob the store. She claimed she did not see it coming but admitted she helped in the cover up effort by removing the store's surveillance camera. She also agreed that she and her son proceeded to shop for groceries at another store (where they were recorded on camera). During this first interview, Thornton asked if the State Attorney could work out a deal for her in exchange for testifying against her son, Dontonio Thornton.
>
> Dontonio was arrested and separately interviewed. He confessed to the robbery as well as to premeditated murder, but stated he committed both at the behest of his mother. He reportedly told law

---

[3] The facts are drawn from the evidence presented at trial, viewed in the light most favorable to the State. *See* Doc. 17, Exs. B2-B3 (Trial Tr.); *see also Jackson v. Virginia*, 443 U.S. 307 (1979).

enforcement that she planned the robbery because she needed the money. And she planned the murder, telling her son he would have to shoot the store clerk because the store clerk had a gun. He also stated that his mother supplied him with the gun he used to shoot the store clerk.

During her second interview with law enforcement, Thornton was confronted by the possibility that her son could face the death penalty. They also told her that the word in the community was she was letting her son take the sole blame for the robbery and murder. Thornton ultimately admitted her involvement in the robbery but maintained she did not commit premeditated murder and did not know Dontonio was going to kill the store clerk.

*Thornton v. State*, 327 So. 3d 1262, 1264 (Fla. 1st DCA 2021), *review denied*, No. SC21-1523, 2022 WL 852975 (Fla. Mar. 22, 2022).

In Escambia County Circuit Court Case No. 2014-CF-004289, Thornton was indicted for First-Degree Murder on alternative theories of felony murder as a principal, and premeditated murder. Doc. 17-3, Ex. B1 at 1–2.[4] The jury found Thornton guilty as charged. Ex. B1 at 58.

The trial court adjudicated Thornton guilty and sentenced her to imprisonment for life. Ex. B1 at 60–67. On November 7, 2016, the First DCA affirmed the

---

[4] Citations to the state-court record are to the electronically-filed exhibits attached to the State's answer. Doc. 17. Citations to page numbers of an exhibit are according to the numbering of the original document. When a page of a document bears more than one page number, the court cites the number appearing at the bottom center of the page.

judgment without written opinion. *Thornton v. State*, 202 So. 3d 413 (Fla. 1st DCA 2016) (per curiam) (Table) (copy at Doc. 17-11, Ex. B9).

On December 9, 2016, Thornton filed in the state circuit court a *pro se* motion to reduce her sentence under Florida Rule of Criminal Procedure 3.800(c). Doc. 17-23, Ex. F1. The state circuit court denied the motion on December 14, 2017. Doc. 17-24, Ex. F2.

On November 6, 2017, Thornton filed a *pro se* motion for postconviction relief under Florida Rule of Criminal Procedure 3.850, which she subsequently amended. Doc. 17-15, Ex. D1 at 9–17 (Mot.); *Id*. at 20-34 (Am. Mot.). Thornton's amended Rule 3.850 motion raised four claims. The state circuit court conducted an evidentiary hearing on three claims (Grounds One, Three and Four), during which Thornton was assisted by counsel. Ex. D1 at 60–180 (Evidentiary Hr'g. Tr.); *Id*. at 181–893 (Evidentiary Hr'g. Exs.). On September 13, 2019, the state circuit court denied relief on all claims. *Id*. at 903-41. The First DCA affirmed. *Thornton v. State*, 327 So. 3d 1262  (Fla. 1st DCA 2021) (copy at Doc. 17-18, Ex. D4). The Florida Supreme Court denied review on March 22, 2022. Doc. 17-21, Ex. D7.

Thornton filed her *pro se* federal habeas petition on April 22, 2022. Doc. 1. The petition raises four claims: a trial-court error claim, a *Brady* claim, and two

ineffective-assistance-of-trial-counsel claims.[5] The State asserts that Thornton is not entitled to habeas relief because she procedurally defaulted two claims, and she fails to satisfy § 2254(d)'s demanding standard for the claims she properly exhausted. Doc. 17.

## II.  RELEVANT LEGAL PRINCIPLES

### A.    Federal Habeas Exhaustion Requirement and Procedural Default

"To respect our system of dual sovereignty, the availability of habeas relief is narrowly circumscribed." *Shinn v. Ramirez*, 596 U.S. ___, 142 S. Ct. 1718, 1730 (2022) (citations omitted). One such constraint is the exhaustion requirement and corollary principle of procedural default. *See* 28 U.S.C. § 2254(b); *Shinn*, 142 S. Ct. at 1731–32.

Section 2254 "requires state prisoners to 'exhaust the remedies available in the courts of the State' before seeking federal habeas relief." *Shinn*, 142 S. Ct. at 1732 (alteration adopted) (quoting 28 U.S.C. § 2254(b)(1)(A)). "To satisfy the exhaustion requirement, the petitioner must have fairly presented the substance of h[er] federal claim" to the state's highest court, either on direct appeal or on collateral review. *Picard v. Connor*, 404 U.S. 270, 277–78 (1971); *Castille v. Peoples*, 489 U.S. 346, 351 (1989). In other words, "state prisoners must give the

---

[5] *See Brady v. Maryland*, 373 U.S. 83 (1963).

state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

When a petitioner fails to exhaust her federal claim and the state court remedy no longer is available, that failure to exhaust is a procedural default. *Boerckel*, 526 U.S. at 839–40; *see also Bailey v. Nagle*, 172 F.3d 1299, 1303 (11th Cir. 1999) (when a petitioner fails to properly exhaust a federal claim in state court, and it is obvious that the unexhausted claim now would be procedurally barred under state law, the claim is procedurally defaulted).

> Together, exhaustion and procedural default promote federal-state comity. Exhaustion affords States an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights, and procedural default protects against the significant harm to the States that results from the failure of federal courts to respect state procedural rules. Ultimately, it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without giving an opportunity to the state courts to correct a constitutional violation, and to do so consistent with their own procedures.

*Shinn*, 142 S. Ct. at 1732 (alteration adopted) (internal quotation marks and citations omitted).

A petitioner seeking to overcome a procedural default must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim[ ] will result in a fundamental

Page 6 of 35

miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Lucas v. Sec'y, Dep't of Corr.*, 682 F.3d 1342, 1352–53 (11th Cir. 2012). A petitioner establishes "cause" by showing that an objective factor external to the defense impeded an effort to properly raise the claim in the state court. *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003). A petitioner establishes "prejudice" by showing at least a reasonable probability that the proceeding's result would have been different. *Id.* at 892.

To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted h[er]." *Schlup*, 513 U.S. at 327. The *Schlup* standard is very difficult to meet:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that that was not presented at trial.

513 U.S. at 327.

**B.    Section 2254 Standard of Review**

A federal court "shall not" grant a habeas corpus petition on any claim that was adjudicated on the merits in state court unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362 (2000).[6] Justice O'Connor described the appropriate test:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

529 U.S. at 412–13 (O'Connor, J., concurring).

Under the *Williams* framework, the federal court first must determine the "clearly established Federal law," namely, "the governing legal principle or

---

[6] Unless otherwise noted, references to Supreme Court's *Williams* case are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 40313).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71–72 (2003). After identifying the governing legal principle, the federal court determines whether the state court's adjudication is contrary to the clearly established Supreme Court case law. The adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *See Early v. Packer*, 537 U.S. 3, 8 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases – indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.").

If the "contrary to" clause is not satisfied, the federal court determines whether the state court "unreasonably applied" the governing legal principle set forth in the Supreme Court's cases. The federal court defers to the state court's reasoning unless the state court's application of the legal principle was "objectively unreasonable" in light of the record before the state court. *See Williams*, 529 U.S. at 409; *Holland v. Jackson*, 542 U.S. 649, 652 (2004). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Section 2254(d) also allows habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an

unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). As with the "unreasonable application" clause, the federal court applies an objective test. *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding."). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams*, 529 U.S. at 410). AEDPA also requires federal courts to "presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'" *Landrigan*, 550 U.S. at 473–74 (quoting 28 U.S.C. § 2254(e)(1)).

The Supreme Court has emphasized often that a state prisoner's burden under § 2254(d) is "difficult to meet, . . .  because it was meant to be." *Richter*, 562 U.S. at 102. The Court elaborated:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. *Cf. Felker v. Turpin*, 518 U.S. 651, 664, 116 S. Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further. Section 2254(d) reflects the view that habeas corpus is a "guard

Page 10 of 35

against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia*, 443 U.S. 307, 332, n. 5, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, <u>a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement</u>.

*Richter*, 562 U.S. at 102–03 (emphasis added).

## C.    Federal Law Governing Claims of Ineffective Assistance of Counsel

The Supreme Court follows a two-pronged test for evaluating claims of ineffective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668 (1984). The petitioner must show (1) her counsel's performance was constitutionally deficient, and (2) the deficient performance prejudiced her. *See id.* at 687. "First, petitioner must show that 'counsel's representation fell below an objective standard of reasonableness.' Second, petitioner must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Darden v. Wainwright*, 477 U.S. 168, 184 (1986) (quoting *Strickland*, 466 U.S. at 694).

The inquiry under *Strickland*'s performance prong is "whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688. "Judicial scrutiny of counsel's performance must be highly deferential," and

courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." 466 U.S. at 689. Trial counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. The burden to overcome that presumption and to show that counsel's performance was deficient "rests squarely on the defendant." *Burt v. Titlow*, 571 U.S. 12, 22–23 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) ("To overcome that presumption, a defendant must show that counsel failed to act reasonably considering all the circumstances." (quotation marks and alterations omitted)); *see also Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) ("[B]ecause counsel's conduct is presumed reasonable, for a petitioner to show that the conduct was unreasonable, a petitioner must establish that no competent counsel would have taken the action that his counsel did take.").

*Strickland*'s prejudice prong requires a defendant to establish a "reasonable probability" of a different trial outcome. *See Strickland*, 466 U.S. at 694. A reasonable probability is one that sufficiently undermines confidence in the outcome. *Id.* at 694. "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *See Strickland*, 466 U.S. at 698. "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Richter*, 562 U.S. at 105 (citations omitted). The Supreme Court explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Id.* at 105 (citations omitted).

## III.    DISCUSSION

**Ground One**      <u>**"The Petitioner's Constitutional Rights to a Fair Trial W[ere] Violated." Doc. 1 at 5.**</u>

Thornton alleges that the trial court erred by admitting into evidence the videotape of her first interview with police "where she initially denied knowing anything about the robbery and murder of Mr. Thuong." Doc. 1 at 5. Thornton claims

Page 13 of 35

that this error violated her constitutional right to a fair trial. Thornton asserts that she exhausted this claim by presenting it in her direct appeal. *Id*. at 6.

The State maintains that to the extent Thornton's claim can be construed as raising a *federal constitutional* claim—as opposed to a state-law issue—the claim is procedurally defaulted because Thornton's direct appeal presented the alleged evidentiary error as a purely state-law question. In other words, Thornton did not apprise the First DCA that the admission of the evidence not only violated state law, but also denied her a federal constitutional right. Doc. 17 at 8-10. The State alternatively argues that even assuming to Thornton's benefit that her federal claim was properly exhausted, she is not entitled to habeas relief because she fails to satisfy § 2254(d)'s rigorous standard. *Id*. at 20–23.

A.    ***Thornton Procedurally Defaulted Her Claim that the Admission of the Videotape Violated Her Federal Constitutional Rights***

Construing Thornton's petition as raising a federal constitutional challenge to the admission of the videotape, federal habeas review is not available because that claim is procedurally defaulted.[7] Thornton's direct appeal brief presented the issue

---

[7] To the extent Thornton challenges the evidentiary ruling on state-law grounds, that claim is not cognizable on federal habeas review. Federal habeas relief is available to correct only constitutional injury. 28 U.S.C. § 2254(a); *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) ("The habeas statute unambiguously provides that a federal court may issue a writ of habeas corpus to a state prisoner only on the ground that

as a purely state-law question and did not fairly apprise the state court of a federal

constitutional claim.

Federal habeas courts "do not require a verbatim restatement of the claims

brought in state court," but the claims that the prisoner presented to the state court

must allow "a reasonable reader [to] understand each claim's particular legal basis

and specific factual foundation." *McNair v. Campbell*, 416 F.3d 1291, 1302 (11th

Cir. 2005) (internal quotation marks and citation omitted). The Supreme Court has

stated that a petitioner can indicate the federal-law basis for her claim "by citing in

conjunction with the claim the federal source of law on which [s]he relies or a case

deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'"

*Baldwin v. Reese*, 541 U.S. 27, 32 (2004). A habeas petitioner does *not* exhaust her

state remedies by merely (1) going through the state courts; (2) presenting to the

state courts all the facts necessary to support the federal claim; or (3) presenting to

the state courts "a somewhat similar state-law claim." *McNair*, 416 F.3d at 1302

(internal quotation marks and citation omitted).

Thornton's direct-appeal brief did not raise a federal constitutional claim—or

cite to any federal case—when arguing that the trial court improperly admitted the

---

he is in custody in violation of the Constitution or laws or treaties of the United
States." (internal quotation marks and citations omitted)).

videotape of her first interview with police. *See* Doc. 17-8, Ex. B6. Thornton cited exclusively to state statutes and state cases, and all of her substantive arguments addressed Florida law. Thornton's narrow arguments were that (1) the evidence was more prejudicial than probative under Fla. Stat. § 90.403; and (2) the evidence was improper character evidence under Fla. Stat. § 90.404. *See* Ex. B6 at 12–19. Those arguments did not bring to the First DCA's attention a federal constitutional claim.[8] *See, e.g., Pride v. Fla. Dep't of Corr.*, No. 19-14284, 2021 WL 6123916, at *2–3 (11th Cir. Dec. 28, 2021) (petitioner's state-law arguments at trial and on direct appeal were not sufficient to exhaust his federal claim that the trial court's evidentiary ruling also deprived him of his federal constitutional rights). Thornton's federal constitutional claim, therefore, is procedurally defaulted.

### B.    *Thornton Has Not Overcome Her Procedural Default*

Thornton makes none of the required showings to excuse her procedural default. Thornton's procedural default bars federal habeas review of Ground One.

**Ground Two      "Ineffective Assistance of Coun[s]el." Doc. 1 at 7.**

Thornton claims that trial counsel was ineffective for "fail[ing] to file motion to suppress incriminating statements made by defend[a]nt." Doc. 1 at 7. Thornton

---

[8] Predictably, the State's answer brief in Thornton's direct appeal similarly relied exclusively on state statutes and state decisional law, and made no reference to a federal constitutional standard. *See* Doc. 17-9, Ex. B7.

asserts that she exhausted this claim by presenting it in her Rule 3.850 motion and postconviction appeal. *Id*. at 7–8. The State maintains that Thornton is not entitled to habeas relief because the state court adjudicated this claim on the merits, and Thornton fails to satisfy § 2254(d)'s demanding standard. Doc. 17 at 10, 23–32.

### A.    *The State Court's Decision*

Thornton presented this claim to the state courts as "Ground One" and "Ground Four" of her amended Rule 3.850 motion. The two grounds were identical. Doc. 17-15, Ex. D1 at 25–27, 30–32.[9] Thornton alleged that trial counsel should have moved to suppress her confession in the second police interview because it was allegedly given under duress when she was told that her son was facing the death penalty. *Id*. at 25–27, 30–32.

The state circuit court conducted an evidentiary hearing on the claim. Three witnesses testified: (1) Ron Davis, Thornton's trial counsel; (2) Michelle Wert, a police officer who investigated the robbery-murder and interviewed Thornton; and (3) Thornton herself. Doc. 17-15, Ex. D1 at 60–119. Several documents were entered into evidence: (1) Wert's investigative report; (2) a transcript of Thornton's first interview with police in its entirety (*i.e.,* unredacted); (3) the waiver of rights form

---

[9] Thornton labeled Ground Four: "**GROUND FOUR (Same as Ground One)**." Doc. 17-15, Ex. D1 at 30.

Thornton executed prior to the first interview; (4) a transcript of Thornton's second interview with police in its entirety (*i.e.*, unredacted); (5) the waiver of rights form Thornton executed prior to the second interview; (6) the unredacted videotape of Thornton's first interview with police; (7) the unredacted videotape of Thornton's second interview with police; (8) a transcript of Mr. Blount's trial testimony (Thornton's boyfriend); (9) the redacted videotapes of Thornton's first and second interviews with police that were played at trial; (10) Dontonio Thornton's first recorded statement to police; (11) Dontonio Thornton's second recorded statement to police; (12) a copy of *Martin v. State*, 107 So. 3d 281 (Fla. 2012); and (13) both volumes of the trial transcript. *Id*. at 60-119.

After hearing, the state circuit court denied relief in a lengthy, detailed order. Doc. 17-15, Ex. D1 at 904–08. Thornton appealed the circuit court's ruling. Doc. 17-16, Ex. D2. The First DCA affirmed.

The First DCA's decision outlined these facts:

> At the evidentiary hearing, Thornton's trial counsel testified that he decided not to file a motion to suppress after reviewing the unredacted video interviews for "police techniques or the circumstances" that would "make some or all of her statements involuntary." He explained that by ''involuntary," he meant that "it would overcome her free will, that they were coercive rather than persuasive or manipulative." He further explained that he considered whether to file a motion to suppress based on the threat of her son receiving the death penalty.

But, based on his review, trial counsel concluded that the death penalty discussion was not "so coercive [that it] overcame [Thornton's] free will . . . based on the totality of the circumstances." In reaching this conclusion, trial counsel noted that the evidence, in its entirety throughout the interviews showed that "Ms. Thornton planned a robbery. . . . She furnished the instrumentality. . . . She furnished the firearm that was used to kill the victim; she furnished the transportation; she furnished the plan." He noted that she could have obtained someone else, but she chose her son. "She picked her son because she knew, being his mother, that he would do anything to help her, . . . including commit a crime, without question." Trial counsel also reasoned that Thornton did not display motherly feelings toward her son at the first interview. "When confronted with the glove . . . and her DNA there, instead of going ahead and fessing up to what her part was in it, instead, she put the whole thing on her son. Now, is she concerned about her son getting the death penalty at that point? I don't think so." He further noted that she asked the State Attorney for a deal for herself and voiced, "I'm fixing to hang my child."

Trial counsel also explained that, at the second interview, law enforcement's interview technique appealed to Thornton's sense of her standing in the community and was not coercive. They told her that "folks in the community and your family are saying that you are letting Dontonio ride this bus by himself."

. . . .

Following the evidentiary hearing, the trial court denied Thornton's motion for postconviction relief. On claims one and four, the trial court found that counsel's decision not to file a motion to suppress was reasonable under the totality of the circumstances, primarily relying on the case of *Martin v. State*, 107 So. 3d 281 (Fla. 2012). In *Martin*, detectives' comments to the defendant about a possible death penalty sentence during a three-and-a-half-hour interview were found not to have coerced a confession; rather, the comments were part of a conversation regarding possible penalties the defendant could face in the absence of further explanation regarding what happened. *Id*. at 302. Based on *Martin* and the totality of the

circumstances, the trial court concluded that "trial counsel's decision not to pursue a motion to suppress was reasonable, and there was no reasonable probability a motion to suppress would have been granted."

*Thornton*, 327 So. 3d at 1265–66.

After making these factual determinations, the First DCA identified *Strickland* as the controlling legal standard, *Thornton*, 327 So. 3d at 1266–67, and denied relief for these reasons:

> Thornton first claims the lower court erred by denying claims one and four because, under the totality of the circumstances, her second recorded confession was clearly involuntary and coerced by the death penalty discussion. Thus, trial counsel was ineffective for failing to file a motion to suppress. We disagree.

> The test to determine whether a confession is involuntary and coerced is whether it was the product of free will and rational choice. *Martin*, 107 So. 3d at 298. This is determined based on "an examination of the totality of the circumstances surrounding the confession." *Id*. (citing *Traylor v. State*, 596 So. 2d 957, 964 (Fla. 1992)). As noted by the lower court, in *Martin*, a discussion of the death penalty by detectives with a defendant was found not to have been coercive but simply to be part of a conversation regarding possible penalties the defendant could face. Here, as in *Martin*, the death penalty was a real possibility for Thornton's son based on the execution of a store clerk during the commission of a felony.

> But even assuming that counsel should have filed a motion to suppress, we find no error in the lower court's conclusion that there is no reasonable probability the motion to suppress would have been granted. The lower court found that counsel's decision was reasonable based on a review of the totality of the circumstances. And the totality of the circumstances—particularly the unredacted interviews—reflect that Thornton's free will was not overcome by detectives mentioning her son's potential exposure to the death penalty. Instead, the record

shows that, when faced with the DNA evidence tying herself to the crime during the first interview, instead of being overwhelmed by motherly love, Thornton blamed her son, admitted only to helping cover up his crime, and asked for the State Attorney to work out an immunity deal for her. She needed the deal because, in her words, she was "fixing to hang my child." During the second interview, even after law enforcement discussed her son's potential liability for the death penalty and attempted to appeal to her sense of her standing in the community if she let her son take all the blame, Thornton still only confessed to the robbery. She maintained that her son acted on his own in the killing and that she did not know what he was going to do.

Based on this record, we find no error in the lower court's conclusion that Thornton's confession during the second interview was not coerced by mention of her son's potential exposure to the death penalty. We also find no error in the lower court's conclusion that there is no reasonable probability that a motion to suppress her statement would have been granted. Thus, we affirm the lower court's order denying claims one and four.

*Thornton*, 327 So. 3d at 1267. The Florida Supreme Court denied review.

## B.   *Thornton Is Not Entitled to Habeas Relief*

Thornton does not dispute any of the First DCA's factual determinations. Any claim for habeas relief, therefore, must be based on whether the state court's ruling was contrary to, or an unreasonable application of, clearly established federal law.

The First DCA's decision was not "contrary to" clearly established Federal law, because the state court identified and applied the two-part *Strickland* standard. *See Williams*, 529 U.S. at 405–06 (interpreting § 2254(d)(1)). In assessing the

reasonableness of the First DCA's application of *Strickland*, this court applies the "doubly" deferential standard described in *Richter*. *See Richter*, 562 U.S. at 105.

As reflected in the First DCA's factual findings, Mr. Davis thoroughly investigated both the law and the facts to determine whether he could make a good-faith argument for suppression based on coercion. Davis described his understanding of the legal standard for determining the voluntariness of a confession, which was a correct statement of the law. Doc. 17-15, Ex. D1 at 97–98; *see Colorado v. Connelly*, 479 U.S. 157, 167 (1986) ("We hold that coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment."); *Blake v. State*, 972 So. 2d 839, 844 (Fla. 2007) ("To establish that a statement is involuntary, there must be a finding of coercive police conduct. The salient consideration in an analysis of the voluntariness of a confession is whether a defendant's free will has been overcome." (internal quotation marks and citations omitted)); *Martin*, 107 So. 3d at 298; *see also Arvelo v. Sec'y, Fla. Dep't of Corr.*, 687 F. App'x 901, 904 (11th Cir. 2017) ("At bottom, a confession was involuntary only when the circumstances show that 'coercive police activity' overcame the defendant's free will." (quoting *Connelly*, 479 U.S. at 167)).

Davis also detailed his reasoning why—after considering the totality of the circumstances—he made the "tactical decision" not to file a motion to suppress. Doc. 17-15, Ex. D1 at 97. Davis concluded, reasonably, that the discussion about Thornton's son's potential exposure to the death penalty did not give rise to a viable claim of coercion. *Id*. at 96–106.

The First DCA respected Davis's informed decision based on his professional judgment. That deference was a reasonable application of *Strickland*'s performance standard. "Because advocacy is an art and not a science, and because the adversary system requires deference to counsel's informed decisions, strategic choices must be respected in these circumstances if they are based on professional judgment." *Strickland*, 466 U.S. at 681; *see also Jackson v. Herring*, 42 F.3d 1350, 1359 (11th Cir. 1995) (under *Strickland*'s performance prong, "counsel need not pursue constitutional claims which he reasonably believes to be of questionable merit"); *Waters v. Thomas*, 46 F.3d 1506, 1518 (11th Cir. 1995) ("[T]he test is whether some reasonable attorney could have acted, in the circumstances, as [counsel] did.").

Concerning prejudice, the First DCA reasonably concluded that Thornton failed to satisfy *Strickland*'s prejudice standard because there was no reasonable probability that the motion to suppress would have been granted. The First DCA's determination—that Thornton's confession was not coerced—was supported by

considerable evidence. Thornton "could not possibly have suffered *Strickland* prejudice" from counsel's failure to file a motion that "would have been futile." *Green v. Georgia*, 882 F.3d 978, 987 (11th Cir. 2018).

In sum, the state court's rejection of Thornton's ineffective-assistance claim was consistent with *Strickland*. Thornton, therefore, is not entitled to habeas relief on Ground Two. *See Meders v. Warden, Georgia Diagnostic Prison*, 911 F.3d 1335, 1354 (11th Cir. 2019) ("It is not ineffective assistance of counsel to fail to make an objection that is not due to be sustained."); *Pinkney v. Sec'y, DOC*, 876 F.3d 1290, 1297 (11th Cir. 2017) ("[A]n attorney will not be held to have performed deficiently for failing to perform a futile act, one that would not have gotten his client any relief."); *Freeman v. Attorney Gen., Fla.*, 536 F.3d 1225, 1233 (11th Cir. 2008) ("A lawyer cannot be deficient for failing to raise a meritless claim."); *Bolender v. Singletary*, 16 F.3d 1547, 1473 (11th Cir. 1994) ("[I]t is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance.").

**Ground Three**      **"Conviction Obtained by the Unconstitutional Failure of Prosecution to Disclose Evidence Favorable to the Defendant." Doc. 1 at 8.**

In Ground Three, Thornton alleges: "Prosecution did not disclose to jury the part of the confession tape where she was coerced by detectives to change her confession by threatening to give her son the death penalty." Doc. 1 at 8. Thornton

asserts that she presented this claim to the state courts in her Rule 3.850 motion. *Id*. at 9. Thornton admits, though, that she did not appeal the lower court's ruling on this claim. *Id*. at 9–10.

The State asserts that this claim is procedurally defaulted because Thornton abandoned it in her postconviction appeal. Doc. 17 at 10–12. The State alternatively argues that even assuming to Thornton's benefit that she properly exhausted this claim, Thornton is not entitled to habeas relief because she fails to satisfy § 2254(d)'s demanding standard. *Id*. at 32–35.

### A.    *Florida's Established Postconviction Process*

Florida's established postconviction process requires a defendant seeking to vacate her conviction to (1) move for postconviction relief under Florida Rule of Criminal Procedure 3.850, and (2) appeal from the order denying postconviction relief. *See* Fla. R. Crim P. 3.850(a), (k); Fla. R. App. P 9.141(b)(3); *see also Leonard v. Wainwright*, 601 F.2d 807, 808 (5th Cir. 1979); *Rodwell v. Singletary*, 114 F. Supp. 2d 1308, 1312 (M.D. Fla. 2000).

The Florida Rules of Appellate Procedure provide that, when a movant's Rule 3.850 motion is denied after an evidentiary hearing, a movant wishing to appeal the denial of her motion must file an initial brief. Fla. R. App. P. 9.141(b)(3). Where an appellant's brief contains no argument on a claim, the claim is insufficiently

presented for appellate review and therefore waived. *See Duest v. Dugger*, 555 So. 2d 849, 851 (Fla. 1990) ("The purpose of an appellate brief is to present arguments in support of the points on appeal. Merely making reference to arguments below without further elucidation does not suffice to preserve issues, and these claims are deemed to have been waived."); *Shere v. State*, 742 So. 2d 215, 217 n.6 (Fla. 1999) (holding that nineteen of prisoner's twenty-three claims raised in his Rule 3.850 motion were "insufficiently presented for [appellate] review" because he "did not present any argument or allege on what grounds the trial court erred in denying these claims."); *State v. Mitchell*, 719 So. 2d 1245, 1247 (Fla. 1st DCA 1998) (finding that issues raised in appellate brief which contained no argument were abandoned).

## B. *Thornton Procedurally Defaulted Her Prosecutorial-Misconduct Claim*

The record confirms that although Thornton presented this claim to the state circuit court as "Ground Two" of her amended Rule 3.850 motion, Doc. 17-15, Ex. D1 at 28–29, and the state circuit court denied relief on the merits, Ex. D1 at 908, Thornton did not raise the claim in her postconviction appeal. Doc. 17-16, Ex. D2. The First DCA noted in its opinion: "Thornton also alleged in claim two that her conviction was unconstitutional because the prosecution failed to disclose evidence favorable to her. The lower court denied this claim, but this ruling has not been challenged on appeal." *Thornton*, 327 So. 3d at 1265 n.2.

Thornton's failure to "invoke[e] one complete round of the State's established appellate review process" renders this claim procedurally defaulted on habeas review. *Boerckel*, 526 U.S. at 845; *see also* 28 U.S.C. § 2254(b)(1); *Atwater v. Crosby*, 451 F.3d 799, 809–10 (11th Cir. 2006) (petitioner who received an evidentiary hearing on his Rule 3.850 motion procedurally defaulted one of his ineffective-assistance claims when he failed to argue the issue in his postconviction appeal; "Pursuant to state procedural rules, abandonment of an issue results from submission of a brief without argument thereon in an appeal of an order denying relief after an evidentiary hearing." (citing *Shere*, 742 So. 2d at 217 n.6)).

### C.    *Thornton Has Not Overcome Her Procedural Default*

Thornton makes none of the required showings to excuse her procedural default. Thornton's procedural default bars habeas review of Ground Three.

**Ground Four**   **"Defense Counsel Was Ineffective for Failing to Question the Omissions on Taped Confession of Defendant." Doc. 1 at 10.**

Thornton's final claim alleges that trial counsel was ineffective for failing to object to the jury hearing a redacted—as opposed to unredacted—version of her second videotaped interview with police. Thornton maintains that the redacted version "altered defendant[']s statement causing prejudice where the jury could not hear facts as they were told." *Id*. at 10. Thornton asserts that she exhausted this claim

by presenting it in her amended Rule 3.850 motion and postconviction appeal. *Id*. at 10–11.

The States responds that Thornton is not entitled to habeas relief because the state court adjudicated this claim on the merits, and Thornton fails to satisfy § 2254(d)'s exacting standard. Doc. 17 at 12–13, 35–38.

**A.    *The State Court's Decision***

Thornton presented this claim to the state courts as "Ground Three" of her amended Rule 3.850 motion. Doc. 17-15, Ex. D1 at 29–30. The state circuit court conducted an evidentiary hearing on the claim, and denied relief in a written order. Doc. 17-15, Ex. D1 at 908–09. Thornton challenged that ruling in her postconviction appeal. Doc. 17-16, Ex. D2. The First DCA affirmed.

The First DCA's opinion outlined these facts:

At trial, over Thornton's objection, a redacted portion of the first interview recording was admitted into evidence.FN1 However, trial counsel did not object to admission of a redacted portion of the second interview recording.

> FN1 Trial counsel objected on the basis that the first recorded interview was unduly prejudicial, and the State was only introducing it to paint Thornton as a liar considering her conflicting statements in the second recorded interview. The State argued that the first interview statement could be admitted because it contained her admission against interest.

Just before publication of the recordings to the jury, the jury was told that each recording was redacted to cut out irrelevant small talk between Thornton and law enforcement. But the redacted portion of the second interview included the death penalty discussion. Thus, the jury did not hear law enforcement tell Thornton that her son may face the death penalty or tell her what people in her community were saying about her letting her son take the blame.

However, the redactions also ensured that the jury did not hear that Thornton had been on probation or had a prior criminal record. Nor did the jury hear law enforcement tell Thornton what her son said about her involvement, that she is the person who planned the robbery and the murder.

. . . .

As to the redactions, trial counsel testified [at the postconviction evidentiary hearing] that redacting the two recorded interviews was part of his comprehensive trial strategy. He explained that he wanted to keep the jury from hearing those portions of the interviews revealing that Thornton was on probation, had a prior criminal record, and had some medical conditions. He also redacted excerpts from the second recorded interview so that the jury would not hear law enforcement confront Thornton with her son's statements about her role as the planner of the robbery-murder.

On the death penalty issue, trial counsel testified that he made a tactical decision to redact law enforcement's statements to Thornton, that her son may face the death penalty. Trial counsel believed that, had he argued that Thornton's second confession was coerced, the State could introduce the son's statements claiming Thornton planned the robbery-murder. As redacted, however, trial counsel explained he could argue, consistently with the first recorded interview, that Thornton had no knowledge the robbery or the murder were going to occur and played no role in planning them.

*Thornton*, 327 So. 3d at 1264–66.

Page 29 of 35

After making these factual determinations, the First DCA identified *Strickland* as the controlling legal standard, *Thornton*, 327 So. 3d at 1266–67, and denied relief for these reasons:

> On claim three, the trial court found that counsel's strategy in redacting portions of the recorded interviews was reasonable and even favorable to Thornton. The trial court reasoned that, considering the incriminating statements made by Thornton's son and conveyed by law enforcement in the redacted portion of the second interview recording, there was no reasonable probability of a different outcome.
>
> . . . .
>
> Thornton . . . argues that the lower court erred in denying claim three—an alternative to claims one and four—because trial counsel's failure to challenge publication of the redacted version of the second recorded interview severely prejudiced her trial defense. Because the death penalty discussion was redacted, she reasons that the jury was deprived of the opportunity to determine whether the death penalty discussion coerced her confession. We disagree and find no error in the lower court's conclusion that trial counsel employed sound trial strategy by agreeing to publish a redacted version of the interviews to the jury.
>
> "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690, 104 S. Ct. 2052. "Reasonable decisions regarding trial strategy, made after deliberation by a claimant's trial attorneys in which available alternatives have been considered and rejected, do not constitute deficient performance under *Strickland*." *Schoenwetter v. State*, 46 So. 3d 535, 554 (Fla. 2010) (citing *Occhicone*, 768 So. 2d at 1048).
>
> Here, trial counsel considered his options and chose, as a matter of strategy, to redact those portions of the second recorded interview that conflicted with Thornton's first recorded interview and contained

prejudicial information concerning her probation and criminal record status. Moreover, counsel's decision was particularly reasonable because the redacted version of the recorded interview was favorable to Thornton. It enabled trial counsel to argue, consistently with Thornton's first recorded statement, that she neither planned the robbery-murder nor knew her son was going to commit the robbery-murder before the incident suddenly began.

But even assuming that counsel should have permitted the jury to hear the entire recording and draw its own conclusion on the coercive effect of the death penalty discussion, we agree there is no reasonable probability of a different outcome. It is unlikely the jury would have believed Thornton's confession was coerced and then disregarded it given her willingness to "hang her child," which was what the jury heard when the first recorded interview was published. And had the full unredacted interview been published, the jury would have learned that her son told detectives that Thornton planned the robbery and the murder. This information was highly prejudicial to the defense.

Based on this record, we find no error in the lower court's conclusion that counsel made a reasonable, strategic decision to keep highly prejudicial information out of the hearing of the jury. Thus, we affirm the lower court's order denying claim three.

*Thornton*, 327 So. 3d at 1266, 1268 (citing *Occhicone v. State*, 768 So. 2d 1037 (Fla. 2000)).

## B. *Thornton Is Not Entitled to Habeas Relief*

Again, Thornton does not dispute any of the First DCA's factual determinations. Any claim for habeas relief, therefore, must be based on whether the state court's ruling was contrary to, or an unreasonable application of, clearly established federal law.

The First DCA's decision was not "contrary to" clearly established Federal law, because the state court identified and applied the two-part *Strickland* standard. *See Williams*, 529 U.S. at 405-06 (interpreting § 2254(d)(1)). And, as the following discussion demonstrates, Thornton also has not shown that the state court's application of the *Strickland* standard was unreasonable.

The First DCA respected Davis's informed, strategic decision—based on his professional judgement—not to object to the redactions. That respect is consistent with *Strickland*'s deferential performance standard. *See Day v. Sec'y, Fla. Dep't of Corr.*, 859 F. App'x 875, 879 (11th Cir. 2021) ("It is clearly established that strategic choices made after thorough investigation of law and facts relevant to plausible options are 'virtually unchallengeable.'" (quoting *Strickland*, 466 U.S. at 690)). A fairminded jurist could agree—for the reasons the First DCA outlined—that Davis's conduct was well within "the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.

Similarly, the First DCA reasonably applied *Strickland*'s prejudice standard in concluding that there was no reasonable probability of a different trial outcome had the jury considered the unredacted version of Thornton's second interview. As the First DCA emphasized, it is highly unlikely that the jury would have construed the officers' statements concerning the death penalty as coercive. And the

unredacted interview would have revealed Thornton's criminal history and her son's statements to police that it was Thornton who came up with the idea and the plan for the robbery and murder.

The First DCA's rejection of Thornton's claim was neither contrary to, nor an unreasonable application of the *Strickland* standard. Thornton is not entitled to habeas relief on Ground Four.

## IV.  A CERTIFICATE OF APPEALABILITY IS NOT WARRANTED

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. *See* 28 U.S.C. § 2254 Rule 11(b).

"[Section] 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'" *Miller-El*, 537 U.S. at 336 (quoting 28 U.S.C. § 2253(c)). "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude

the issues presented are adequate to deserve encouragement to proceed further.'" *Buck v. Davis*, 580 U.S. 100, 115 (2017) (quoting *Miller-El*, 537 U.S. at 327). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (emphasis added). Here, Petitioner has not made the requisite demonstration. Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." 28 U.S.C. § 2254 Rule 11(a). If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

## V. CONCLUSION

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that:

1.     The petition for writ of habeas corpus, Doc. 1, challenging the judgment

of conviction and sentence in *State of Florida v. Willie Mae Thornton*,

Escambia County Circuit Court Case No. 2014-CF-004289, be **DENIED**.

2.     The District Court **DENY** a certificate of appealability.

3.     The clerk of court close this case file.

At Pensacola, Florida, this <u>3rd</u> day of March, 2023.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the report and recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.**